[Civ. No. 10063.  First Appellate District, Division Two.—March 21, 1936.]

MARY FULLER, Respondent, v. FRANCES R. NELLE, as Administratrix, etc., et al., Appellants.

Walter E. Dorn, L. W. Lovey, Walter H. Robinson, John D. Phillips and Clifford W. Nelle for Appellants.

Kemper Campbell and Litta Belle Campbell for Respondent.

STURTEVANT, J.—In an action brought to establish a trust the trial court made findings in favor of the plaintiff and from the judgment entered thereon the defendants have appealed.

On the 2d day of July, 1926, Clifford A. Fuller and Harriet H. Fuller, his wife, agreed to make a mutual will. Before doing so they entered into a contract with their adopted daughter, Frances R. Nelle, one of the defendants, by and under the terms of which they conveyed to the latter certain parcels of property in consideration of the promise made by Mrs. Nelle that she would not thereafter interfere in any respect whatever with the carrying out of the provisions of any transfer her parents might make of their other properties. Having made said written contract with their daughter, Mr. and Mrs. Fuller thereafter made and executed a mutual will. Later, Mr. Fuller died. The mutual will was admitted to probate and his interest in the properties mentioned in said mutual will was, pursuant to the terms of said will, distributed to his widow. On the 7th day of April, 1927, Mrs. Fuller executed an holographic will and, a little later, on May 9, 1927, she executed a written revocation of the mutual will. On February 9, 1931, Mrs. Fuller died. After due proceedings had the Superior Court of the State of California, in and for the County of Contra Costa, made an order admitting the holographic will to probate. Thereafter all of the beneficiaries named in the mutual will appeared and filed a contest in which they alleged that the holographic will was not executed by the decedent in the manner or form required by law; but that it was executed as a direct result of duress, menace, fraud and undue influence exercised by Frances R. Nelle. They also alleged the execution of the mutual will, that it had not been revoked, and that under its provisions it was agreed between Mr. and Mrs. Fuller that

the property of both should not be disposed of by either of them except as therein provided. Continuing they set forth facts which, if true, would have sustained an order revoking the probate of the holographic will and admitting to probate the mutual will. The defendants in this case appeared and answered said petition by alleging that the holographic will was executed in the form required by law; that it was not executed by duress, menace, fraud or undue influence exercised by Frances R. Nelle or anyone else. They denied that under the provisions of the mutual will Mr. and Mrs. Fuller agreed in effect or otherwise that the property of both should not be disposed of by either of them except as therein provided. They also denied that the mutual will was the last will of Mrs. Fuller and alleged affirmatively that said will was revoked on May 9, 1927. To that pleading the beneficiaries under the mutual will filed an answer in which they alleged that the purported revocation was a forged instrument and they further alleged that said forged instrument was obtained by the exercise of undue influence by Frances R. Nelle upon the will and mind of Mrs. Fuller. The probate court made findings in favor of these defendants on all of the issues. The pleadings were very broad and the findings with great care found upon every issue made by the pleadings.

The findings in the probate proceeding were filed on April 1, 1932. A notice of appeal was filed June 13, 1932. The instant case was commenced in the Superior Court of the State of California, in and for the County of Los Angeles by the filing of the complaint on May 31, 1932.

In the trial court these defendants contended, and in this court they now contend, that there was no agreement between Mr. and Mrs. Fuller that the mutual will should not be revoked. That contention is based, in part, on the fact that no writing was produced evidencing such an agreement and that a writing is indispensable evidence. (Civ. Code, sec. 1624, subd. 6; Code Civ. Proc., sec. 1973, subd. 6.) In reply the plaintiff contends that under the facts these defendants are estopped from pleading the statute of frauds because Mrs. Fuller accepted the benefits of said agreement and thereafter retained the same. (*Notten* v. *Mensing,* 3 Cal. (2d) 469 [45 Pac. (2d) 198].) To that contention these defendants reply that Mrs. Fuller did not obtain title to all of the property in suit through the estate of her deceased

husband. However, they concede that Mrs. Fuller received substantial sums from his estate. Not waiving their contention that any agreement not to revoke should have been in writing, the defendants earnestly contend that there was no evidence, written or oral, showing that Mr. and Mrs. Fuller agreed that neither would revoke the mutual will. We think there was substantial evidence on that subject. That with meticulous care a mutual will was drawn for and executed by both Mr. and Mrs. Fuller is not controverted. There is not a particle of evidence that down to the date of the death of Mr. Fuller either one was dissatisfied with any single part thereof. Mr. Fuller never for a moment considered a revocation of any part of the will but down to his dying hour the matter of carrying out the terms of the will was the one thought foremost in his mind. Three or four days before Mr. Fuller died Mr. Thomas A. Hanna, assistant manager of investments for the Southern California Edison Company, called. He was an acquaintance of ten years or more and a business adviser of Mr. Fuller. The latter was in bed suffering from his last illness. Mrs. Fuller was sitting on the bedside. Mr. Hanna testified that Mr. Fuller asked him to advise Mrs. Fuller from time to time, and then Mr. Fuller said " 'I don't expect that I will be here much longer, but I want to feel that she can always come to you if she wishes or you to come to her. . . . This is a matter between my wife and myself and I can depend upon my wife to carry out our mutual wishes. You know what those wishes are; those wishes are expressed in this will.' . . . Mrs. Fuller did not say anything." That testimony was not broken down in any respect by the direct examination or cross-examination of Mr. Hanna nor disputed by any other witness. If we examine the meaning of the words used it is to the effect that Mrs. Fuller will not revoke. Indeed it means more, she will not default but will actively cause the will to be executed as written. Certain declarations by Mrs. Fuller were to the same effect.

The defendants assert that the plaintiff is barred by the above-mentioned decrees in probate. As we recited the facts it will be noted that when the instant case was commenced the decree in probate had not become final and therefore could not be pleaded. The appeal was not decided until December 18, 1933. At that time this court filed a decision affirming the probate decrees. (*Estate of Fuller*, 135 Cal.

App. 781 [28 Pac. (2d) 399].) The *remittitur* went down
February 17, 1934. These defendants now claim that the
judgment in the probate proceedings was a bar on all issues
presented in the instant case. That contention is too broad.
As to every issue of which the probate court had jurisdiction
the contention of the defendants is sound. (*Clapp* v. *Vatcher*,
9 Cal. App. 462, 466 [99 Pac. 549].) However, the grava-
men of the plaintiff's claim in the instant case is the contract
which she claims was made by Mr. and Mrs. Fuller in behalf
of this plaintiff and the beneficiaries represented by her.
That entire subject-matter is one of which a probate court
may not take jurisdiction but under a long line of cases a
court of equity may take jurisdiction. In *Estate of Rolls*,
193 Cal. 594, at page 599 [226 Pac. 608], the court said:
"The grounds of objection are that she agreed and contracted
with her husband not to execute a will that would in anywise
change the disposition of the property made by the conjoint
will. Whatever there may be of merit in this claim we are
satisfied that the question cannot be litigated in a probate
court but that relief in such cases must be sought in a court
of equity. The remedy of a person injured by the violation
of a contract to make testamentary provision for another
must be pursued in a court of equity and not in a court of
probate. Courts of equity will interfere in the administration
of estates where the powers of the courts of probate and their
modes of procedure preclude them from doing complete jus-
tice and then only for the purpose of rendering indispensable
aid to courts of probate, remitting their decrees to that court
to be carried into effect." Following the doctrine of that
case, in *Estate of Carpentier*, 104 Cal. App. 33, at page 34
[285 Pac. 348], this court said: "The court's action was
correct. A will, though it may be irrevocable as a contract
is none the less revocable as a will, and in case such a will
is revoked, the injured party cannot contest the later will
in the probate court on that ground or insist on the probate
of the earlier will, but is remitted to an independent action
at law or in equity to enforce whatever rights he may have.
(*Estate of Rolls*, 193 Cal. 594 [226 Pac. 608]; *Estate of Berry*,
195 Cal. 354 [233 Pac. 330].)" True it is that in the pro-
bate court the issue of contract or no contract was pleaded,
tried out, and found upon. However, it is settled law that
jurisdiction of the subject-matter may not be conferred by

the stipulation of the parties. In the litigation involving the estate of Frank D. Silva, a set of facts almost parallel arose. After his death a will was admitted to probate and thereafter an application to revoke the probate of the will was made. All parties apparently appeared and presented their respective claims to the court. The court made an order refusing to revoke the probate of the will and from that order an appeal was taken. The order was affirmed. (*Estate of Silva,* 169 Cal. 116 [145 Pac. 1015].) Brazil, one of the defeated heirs, commenced an action to impress a trust. In that case, as in this case, it was asserted that the decree in probate was a bar. However, in reply to that contention the court said: "It was held that the facts now presented by the complaint and then presented by way of contest were not a ground for refusing probate of the will, and could not be considered, and that if the present plaintiffs were entitled to any relief it would have to be sought outside of the probate proceedings. It follows that plaintiffs are not concluded by the order admitting the will to probate." . (*Brazil* v. *Silva,* 181 Cal. 490, 493 [185 Pac. 174, 175].)

█ In view of what has been said above we think it is clear that it becomes wholly immaterial that the probate court found the purported written revocation was valid, the purported holographic will was valid, and that the defendant, Mrs. Nelle, was not guilty of duress, fraud, menace or undue influence. No one of those facts eliminates or tends to eliminate the contention that after Mrs. Fuller had received and accepted the estate of her deceased husband she was in no position to then transfer the assets of the two spouses in violation of the terms of her agreement with her husband.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 20, 1936, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 18, 1936.