[Civ. No. 13703.   First Dist., Div. One.   Oct. 13, 1948.]

JOSEPH L. RYAN, Appellant, v. ALEXANDER JOHN
WELTE, as Executor, etc., et al., Respondents.

L. L. James and Carl E. Day for Appellant.

Richard J. Dolwig and Antonio J. Gaudio for Respondent.

BRAY, J.—Appeal[1] by plaintiff from a judgment in favor of defendants on the pleadings. While the judgment followed a motion for judgment on the pleadings, it is obvious from the record that the judgment was, in effect, one after a demurrer to the second amended complaint was sustained without leave to amend.

---

[1] Consolidated with the appeal from the order of Judge Clark Clement overruling plaintiff's objections to the hearing of any matters in this action by Judge Aylett R. Cotton, No. 13639, *ante*, p. 888 [198 P.2d 351]. For the history of the proceedings in the case up to the hearing of the demurrer to the second amended complaint, see the other appeal. Judge Cotton sustained the demurrer to the second amended complaint without leave to amend, after his qualifications were upheld.

The action is for the purpose of establishing a trust in favor of plaintiff in certain properties standing of record at the time of his death in the name of Daniel McSweeney, deceased, of whose estate defendants are executor and executrix respectively.

The second amended complaint is in two causes of action. The substance of the allegations of the first cause of action follows: Plaintiff is the son of Joseph Ryan and Mae Ryan. Joseph died many years ago, leaving Mae Ryan as his widow. In 1912 or 1913, Mae married Daniel McSweeney (the decedent here). At the time of this marriage Mae had $1,500; Dan had nothing, not even a job. With Mae's money and their joint efforts, within two or three years they began to accumulate money and property. About this time they orally agreed, which agreement was orally reaffirmed many times, that everything accumulated during their married life, by either or both, should be owned jointly; to go to the survivor in the event of the death of either. On the death of the survivor, any estate that was left should go to plaintiff and his sister, in equal shares, or to the survivor of them. It was further agreed that the survivor of Dan and Mae would do all things necessary to effectuate this agreement.

In pursuance of the agreement, large amounts of money and property were accumulated by them in joint tenancy, and were so held at the time of the death of Mae in 1934. By her agreement to permit all accumulations to be held in joint tenancy, Mae did forego, in reliance upon the agreement, her right to make testamentary disposition of any of the property to plaintiff and his sister or anyone else.

Upon Mae's death all of the property and money, pursuant and subject to the agreement, passed to Daniel, who accepted the benefits of the agreement and retained the property. Daniel died in 1946 and at the time of his death held title, pursuant to the agreement, to the money and property described. In 1940, Daniel made a will (a copy of which is annexed to the complaint) in which, in violation and disregard of the agreement, he disposed of certain moneys and property to defendants Alexander John Welte (the husband of plaintiff's sister) and Eleanor Welte, the former wife of plaintiff. Plaintiff asks that a trust be declared in his favor in one-half of this money and property.

The second cause of action includes the allegations of the first as to the facts upon which the claim of trust is based, and then alleges that Daniel, in his lifetime, in disregard

and violation of the agreement, without consideration, and with full knowledge by the grantees of the agreement between Daniel and Mae, attempted to transfer by deeds certain properties to defendants Alexander and Eleanor Welte. As to an undivided one-half of these properties, plaintiff asks that it be determined that these defendants are holding it in trust for him.

Defendants contend that the demurrer was properly sustained and judgment granted upon four grounds: (1) That the complaint lacks any allegations of actual fraud; (2) that it does not allege facts sufficient to give rise to a constructive trust; (3) that the agreement upon which the action is based is barred by the statute of frauds (Civ. Code, § 1624(6), and Code Civ. Proc., § 1973(6)); and (4) that the second cause of action is ambiguous, indefinite and uncertain.

## JURISDICTION

One of the grounds upon which the court sustained the demurrer was that the matters set forth in the complaint were only cognizable in the probate court and that the superior court had no jurisdiction thereof. At argument, defendants conceded that this holding was wrong and that the matters alleged, if they stated a cause of action, must be tried in a court of equity and not in the probate court. The authorities are clear on this point. (See 26 Cal.Jur. 834; *Estate of Rolls,* 193 Cal. 594 [226 P. 608]; *Bank of California* v. *Superior Court,* 16 Cal.2d 516 [106 P.2d 879]; *Brazil* v. *Silva,* 181 Cal. 490 [185 P. 174]; *Estate of Berry,* 195 Cal. 354 [233 P. 330]; *Estate of Cropper,* 83 Cal.App.2d 105 [187 P.2d 780].) In *Sonnicksen* v. *Sonnicksen,* 45 Cal.App. 2d 46 [113 P.2d 495], the appellate court held under circumstances somewhat similar to those in this case that a suit in equity is the proper procedure. In their brief, defendants advance the claim that the court in its ruling that the probate court alone had jurisdiction based it on that portion of Daniel's will which stated: ''I purposely leave and knowingly leave my Step-son, Joseph L. Ryan, property of less value than Mrs. Eleanor Ryan, his wife, and my Step-son-in-Law, Alexander J. Welte, Jr. for the reason that I have provided for said Joseph L. Ryan more during his life than I did for the others mentioned in this Will and he has had more than his share.'' The court, say defendants, considered that the testamentary disposition in plaintiff's favor when considered with reference to *inter vivos* transfers ''satisfied

the terms of the alleged oral agreement in full and relegated appellant to the distribution in the probate court of that portion of the estate devised and bequeathed to him.'' This reasoning is a bit involved. ■ For the purposes of demurrer, the existence of the oral agreement is necessarily admitted, and whether the conveyances by Daniel, in his lifetime, to plaintiff, plus the devise to him in the will, equalled the share to which plaintiff was entitled, was a matter of defense and a question of fact to be decided at the trial, and not a matter to be determined on demurrer. According to the will, defendant Eleanor Ryan, plaintiff's former wife, receives a substantial devise. There is no provision for her in the agreement. If there is any uncertainty between the allegations of the complaint and the will attached as an exhibit, defendants failed to cite such by way of special demurrer. ■ As stated in 21 California Jurisprudence, page 110, a general demurrer does not reach the objection that the averments of the complaint are inconsistent with an exhibit attached to and made a part thereof.

### ALLEGATIONS OF FRAUD

Citing the facts in the cases of *Brazil* v. *Silva, supra,* and *Fuller* v. *Nelle,* 12 Cal.App.2d 576 [55 P.2d 1248], defendants contend that there are no similar allegations of actual fraud in the complaint here. While the word ''fraud'' is not used and while the facts here are different than those shown in the cited cases, the complaint does allege the fact that Daniel in complete disregard of his agreement conveyed and devised the property to others than those entitled to it under the agreement. This, as will be pointed out later, constituted constructive fraud. ■ As said in *Notten* v. *Mensing,* 3 Cal.2d 469, 476 [45 P.2d 198] : ''In order to raise the estoppel, fraud in some form is essential, but it is not required that an actual intent to defraud or mislead exist—all that is required is that there exist 'a fraud inhering in the consequences of thus setting up the statute.' . . . *Although in the present case fraud is not alleged as a conclusion, the facts from which that conclusion necessarily follows are alleged.*'' (Emphasis added.)

### FACTS SUFFICIENT TO RAISE A CONSTRUCTIVE TRUST. THE STATUTE OF FRAUDS NOT APPLICABLE

■ These two points will be considered together, as both contentions of defendants in this behalf are fully answered by the case of *Notten* v. *Mensing, supra.* The facts in that

case closely approach those in our case, the only difference being that there the husband and wife agreed to and did make reciprocal wills. There is no logical or reasonable distinction between an agreement to ''do all things necessary to effectuate'' an agreement for the eventual disposition of the property of husband and wife, and one to make wills for the same purpose. As stated by the court (pp. 476-477): ''The complaint alleges the making of the oral agreement to leave the property to their respective collateral kindred upon the death of the survivor; the making of the reciprocal wills pursuant to such agreement; the death of the husband before either will was revoked; the acceptance by the wife of the benefits under her husband's will; the wife's revocation of the old will and the execution of the new will in violation of the oral agreement. These facts clearly constituted a change of position and reliance on the agreement, under the cases cited, sufficient to raise the estoppel.'' The action there was to enforce a constructive trust on the property devised in violation of the oral agreement and the reciprocal wills executed pursuant thereto, and an order sustaining a demurrer to the complaint, without leave to amend, was reversed. In the Notten case, concerning the question of the enforceability of the oral agreement, the court stated: ''There is a long line of authorities in this state to the effect that under the proper circumstances a party may be estopped to plead the statute of frauds. We are of the opinion that the facts pleaded in the complaint present a proper case for the application of that rule. It is our opinion that when two parties execute reciprocal wills pursuant to an oral agreement, and one of the parties dies before either will is revoked, and the other party accepts the benefits of the decedent's will, and then revokes, a constructive fraud sufficient to raise the estoppel has been practiced on the first decedent and on the beneficiaries of the oral agreement.'' (P. 474.) The complaint in the Notten case was held sufficient to state a cause of action.

In *Aho* v. *Kusnert*, 12 Cal.2d 687 [87 P.2d 358], the second count alleged that plaintiffs' stepfather induced their mother to purchase property with her separate funds in reliance on his representation and promise that plaintiffs should have the property when the mother and stepfather ''were gone.'' In violation of the promise, he devised the property to the defendant, whom he married after the death of plaintiffs' mother. Despite the fact that the agreement was oral, the court held that the defendant received the property in trust

for the plaintiffs. As stated in the opinion: "By reason of his promise and understanding with plaintiffs' mother, Kusnert [the father], upon her death, received title to the property paid for in part by her separate funds and in part by community funds. He broke his promise to her when he devised said property to his second wife. In such circumstances equity, through fastening a trust upon the property, will secure to plaintiffs the benefits of said promise although orally made." (P. 690.)

Defendants attempt to avoid the effect of the Notten and Aho cases by quoting from the Notten case "These facts clearly constituted a change of position and reliance on the agreement, under the cases cited, sufficient to raise the estoppel" (p. 477) and then stating: "These factors, while present in one form or another in each of the cases following *Notten* v. *Mensing, supra,* are not present in this case and are not alleged in the second-amended complaint." However, contrary to this assertion, the complaint alleges that in reliance upon the agreement, and in accordance therewith, Mae was induced to and did forego the right of testamentary disposition which she had before entering into the agreement, and that Daniel accepted the benefits of the agreement and retained the property received thereunder. These allegations show the change of position and acceptance of benefits upon which the decisions in the Notten and Aho and other cases are based. While, as asserted by defendants, there was no allegation of a "change of position on the part of the *heirs*" (emphasis added) it is the change of position of the *contracting parties*, and not the beneficiaries of the contract, that forms the estoppel to rely upon the statute of frauds.

The same principles as applied in *Notten* v. *Mensing* and *Aho* v. *Kusnert, supra,* were held to govern *Fuller* v. *Nelle, supra.* There, husband and wife conveyed certain parcels of property to their daughter in consideration of her promise not to interfere thereafter in any way with the carrying out of the provisions of any transfer her parents might make of their other properties. They agreed to, and did, execute mutual wills. Following the death of the husband, the wife, after accepting the benefits of his will, revoked her mutual will and attempted a testamentary disposition other than that agreed upon by the spouses. A constructive trust was declared in favor of the beneficiaries of the mutual wills. (See, also, *Brazil* v. *Silva, supra,* 493, to like effect.)

In *Sonnicksen* v. *Sonnicksen, supra,* the court applied the same rules of "quasi-specific performance" in a separation agreement to make mutual wills leaving the property to the survivor, and on the latter's death to the children of the parties. While there, as in *Fuller* v. *Nelle, supra,* the agreement was a written one, the principles stated apply to the instant case.

Defendants rely upon *Zellner* v. *Wassman,* 184 Cal. 80 [193 P. 84], and *Beard* v. *Melvin,* 60 Cal.App.2d 421 [140 P.2d 720], in which oral agreements to leave money or property by will were held to be within the statute of frauds. The fact that distinguishes the Zellner case from ours is expressed by the court in these words: "The words and conduct on the part of decedent in making the oral promise and accepting plaintiff's performance did not amount to an inducement to plaintiff to, in effect, waive a written instrument in reliance upon a representation that decedent would stand by his agreement and not avail himself of the statute of frauds. There is, therefore, an absence of the element of fraud which is requisite to an estoppel." (P. 431.) Moreover, in that case, a judgment of nonsuit was reversed on the ground that the complaint stated a cause of action for the recovery of the reasonable value of the services rendered. It was in compensation of these services that the oral promise to bequeath money had been made.

In *Cazaurang* v. *Carrey,* 117 Cal.App. 511 [4 P.2d 259], in which it was claimed that husband and wife agreed to make mutual wills and keep them in effect, and in which the husband revoked his will, there was no claim of change of circumstances. The court said: "While it may be true that equity may relieve a party from the effects of such a statute in a proper case and upon a sufficient showing, no equitable circumstance, such as fraud or the like, here appears to entitle the appellant to any such equitable relief." (Pp. 517-518.)

*Baker* v. *Bouchard,* 122 Cal.App. 708 [10 P.2d 468], was a case in which the plaintiff sought to establish an alleged oral contract to make a will in her favor, in consideration of her furnishing decedent necessary food and care during his declining years. There the court not only found that there was no such agreement, but that the plaintiff's acts in taking care of the decedent were under an arrangement by which plaintiff was to occupy decedent's home, rent free.

In the Beard case, *supra,* the dissimilarity with the facts of our case is shown by the following language of the opinion: "Plaintiff's complaint contains no allegation of fraud on the part of Alice Melvin [the mother], and . . . appellant asserts that his complaint is not for enforcement of the contract but for the value of his claim against the estate of Herbert G. Melvin [the father]." (P. 431.)

### SECOND CAUSE OF ACTION. LACHES

■ Defendants contend that this cause of action is ambiguous, indefinite and uncertain, primarily because the date of the conveyance by Daniel in violation of the agreement is not given. There is no special demurrer on this ground. However, if there were, such ground does not justify sustaining the demurrer without leave to amend. (*Wennerholm v. Stanford Univ. Sch. of Med.,* 20 Cal. 2d 713 [128 P.2d 522, 141 A.L.R. 1358].) There is a special demurrer to the effect that the alleged causes of action are barred by laches. Defendants' position in this regard is that as the date of the conveyance by Daniel is not set forth in the complaint, except that probably it was in the 12 years between the deaths of Mae and Daniel, the complaint "fails to allege any facts in avoidance of the defense of laches and the statutes of limitations . . . involved." There is no plea of the statutes of limitations in the demurrer. ■ Laches is a matter of defense which must be alleged and proved by the party asserting such defense. (*Katz* v. *Enos,* 68 Cal.App.2d 266 [156 P.2d 461].)[1]

The second amended complaint states a cause of action and therefore the demurrer should have been overruled. ■ In addition to appealing from the judgment, plaintiff attempts to appeal from the order sustaining the demurrer without leave to amend and the order granting the motion for judgment on the pleadings. These orders are not appealable. It is the judgment which is appealable.

The judgment is reversed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied November 12, 1948, and respondents' petition for a hearing by the Supreme Court was denied December 9, 1948.

---

[1]See *Maguire* v. *Hibernia S. & L. Soc.,* 23 Cal.2d 719, at page 735, et seq. [146 P.2d 673, 151 A.L.R. 1062], for a detailed discussion of the defense of laches.